IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ADAM JEROME KENNEDY,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 2:12-CV-365
CRIM. NO. 2:10-CR-095(1)
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

## REPORT AND RECOMMENDATION

Petitioner, Adam Jerome Kennedy, filed this motion to vacate under 28 U.S.C. §2255 after he was sentenced to 180 months of imprisonment and five years of supervised release on multiple charges of drug trafficking conspiracy, money laundering, and unlawful possession of a firearm. Petitioner pleaded guilty to those charges. He now claims that James Owen, an attorney whom he retained prior to the filing of the indictment, and who, according to the Court's docket, formally represented him for roughly thirty days during the life of the case, provided him with constitutionally deficient advice, and that he should be permitted to withdraw his guilty plea and enter a plea to lesser charges. For the following reasons, the Court recommends that the motion to vacate be **DENIED**.

### I. PROCEDURAL HISTORY

On April 14, 2010, the Grand Jury returned a sealed indictment charging petitioner with eleven counts of criminal conduct, ranging from conspiracy to distribute and possess with intent to distribute up to five kilograms of cocaine (Count 1) to conspiracy to commit

money laundering (Count 11). One count of possession of firearms by a convicted felon was also included in the indictment (Court 7). On May 19, 2010, the Grand Jury returned a superseding indictment which added an additional defendant, Juan Luis Perez-Valtierra, and two additional counts.

Petitioner was arrested on April 21, 2010. He appeared without counsel and was temporarily detained, pending a detention hearing, on motion of the United States. Two days later, in a document signed both by petitioner and by Attorney Owen, petitioner waived his detention hearing. *See* Doc. 11. Mr. Owen formally entered his appearance on April 28, 2010.

Exactly one month later, the Court appointed CJA counsel, Ermel Luckett, to represent petitioner. Leading up to that development, the United States filed a "Request for Inquiry Concerning Conflict of Interest Representation" on May 10, 2010 (Doc. 15) suggesting that Mr. Owen might not be able ethically to continue to represent petitioner because he represented a different defendant (one Thomas Mundell) in an earlier case who had been cooperating with the government, who had provided information about petitioner's involvement in criminal activity, and who was also expected to testify against petitioner if the case went to trial. That issue was addressed in open court on May 27, 2010, when petitioner was arraigned on the superseding indictment. At that proceeding, Mr. Owen moved to withdraw. Petitioner consented to the motion. He subsequently submitted a financial affidavit and the Court appointed counsel for him. Although not particularly pertinent to the issues raised in the motion to vacate, the Court notes that

2

petitioner retained a different attorney, Frederick Thomas Moses, who entered an appearance on June 7, 2010; that Mr. Moses subsequently asked for, and received permission to, withdraw; that Attorney Keith Golden then entered an appearance for petitioner; and that Mr. Golden represented petitioner throughout the remainder of the case, including appearing on his behalf at sentencing.

Petitioner did not proceed to trial. Rather, he signed a plea agreement on August 30, 2010, and pleaded guilty pursuant to that agreement on September 2, 2010. In exchange for his plea of guilty to counts 1, 3, 7 and 11 of the superseding indictment (charging a cocaine conspiracy, a marijuana conspiracy, unlawful possession of a firearm by a convicted felon, and conspiracy to commit money laundering), the United States dismissed the other counts.

In the plea agreement, the parties agreed that the base offense level for the drug conspiracy charges was 36, and that with various adjustments, the final base offense level should be calculated at 40. The Court agreed. At the sentencing hearing, the Court also found that petitioner's criminal history level was VI, but departed downward to level V because the petitioner's criminal history was somewhat overstated. The Court then adjusted the offense level to 34 based on a 5K1.1 motion filed by the United States, producing a guideline range of 235 to 293 months. After considering additional factors which are pertinent under 18 U.S.C. §3553(a), the Court, for reasons it explained at the sentencing hearing, imposed a sentence of 180 months. *See* Doc. 125.

## II. THE MOTION TO VACATE

Petitioner asserts a single claim of ineffective assistance of counsel in his motion. In order to put the claim into proper context, it is helpful to set forth the factual background for his claim, most of which appears undisputed. The Court's summary of the facts comes primarily from the evidentiary materials which petitioner submitted to support his motion.

Sometime in 2009, petitioner became aware that he was being investigated by the federal government for suspected criminal activity. He retained an attorney, William Meeks, to advise him on that matter. Mr. Meeks wrote a letter to now-retired Assistant United States Attorney Robyn Hahnert on February 20, 2009, advising her of his representation of petitioner, and requesting a meeting. *See* Government's Answer, Doc. 149, Exhibit 1.

According to petitioner's affidavit (*see* Doc. 142), Mr. Meeks spoke to Ms. Hahnert and reported that charges were going to be filed against petitioner, but that in order to avoid being indicted, he "could plead out to a 'bill of information' and that by doing so [he] might get a sentence of ten years and avoid a much higher sentence of decades in prison." Petitioner was uncertain if he should follow this advice, and sought a second opinion from Mr. Owen. Petitioner claims that Mr. Owen told him that he could "beat" the case against him, and that, most significantly, petitioner should do nothing until the case was presented to the Grand Jury because "the government might not even be able to get the grand jury to charge [him] and that there was a chance that Ms. Hahnert was bluffing and simply trying to get [him] to plead guilty when the government did not have a good case ...." *See*

4

Kennedy Affidavit, ¶s 4, 7 & 9.

What happened next is described above and reflected in the Court's records - namely, that the grand jury did return an indictment, and that petitioner ultimately pleaded guilty to charges which netted him fifteen years in prison. Petitioner asserts that he now realizes "that I would have had a better situation if I would ignored (sic) Mr. Owen and simply did what Mr. Meeks suggested." *Id.*, ¶14. He buttresses his claim with an affidavit from Mr. Golden, who states that the United States has, indeed, offered to allow defendants to plead to an information in lieu of an indictment containing more serious charges, and that "I learned from Mr. Kennedy and later confirmed with both Ms. Jones-Hahnert and Assistant U.S. Attorney Kevin Kelley that the government had reached out to Mr. Kennedy with a (sic) extremely favorable offer of a plea agreement based on an information prior to an indictment being obtained." *See* Golden Affidavit, Doc. 142, at ¶4. Mr. Golden also states that he attempted to resurrect the earlier deal but was told that although the United States would take petitioner's late-promised cooperation into account, "in no event would it be equal to that which he would have received had he plead to the original offer as to an information." *Id.*, ¶6.

Petitioner's theory is that he received incorrect advice from Mr. Owen (who was also laboring under a potential conflict of interest due to his representation of Mr. Mundell) and that this led him to reject the offer communicated to him by Mr. Meeks. He asserts both that Mr. Owen's advice fell below the constitutionally-mandated standard required of attorneys by the Sixth Amendment and that he was prejudiced because it is reasonably

5

likely that the outcome of these proceedings - specifically the sentence - would have been different but for Mr. Owen's erroneous advice. As relief, he asks the Court to vacate his conviction and sentence, to direct the United States to re-offer the plea deal originally tendered by Ms. Hahnert, and to permit him to plead guilty to an information with the understanding that he would receive a sentence of "about ten years, with the possibility of cooperating and getting lower than ten years." *See* Petitioner's memorandum, Doc. 142, at 16.

### III. ANALYSIS

Petitioner has raised a claim of ineffective assistance of counsel. The standard for reviewing such a claim is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a

6

probability sufficient to undermine confidence in the outcome." *Id*. Because Petitioner must satisfy both prongs of the *Strickland* test, should the Court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The United States does not necessarily dispute that Mr. Owen gave petitioner some bad advice. It does not concede that he provided constitutionally ineffective assistance of counsel, however, and it raises a threshold issue. At the time Mr. Owen advised petitioner to reject a plea deal and wait for the results of the Grand Jury process, petitioner had not been indicted or otherwise formally charged. This fact, says the United States, is fatal to his claim, because the Sixth Amendment right to the effective assistance of counsel does not attach until formal charges are filed. If that is so, no matter how deficient or inaccurate Mr. Owen's advice was, it cannot serve as the basis for a constitutional challenge to petitioner's conviction and sentence.

The time when the Sixth Amendment right to counsel attaches for purposes of a claim of ineffective assistance of counsel is not an open question in this Circuit. In *United States v. Moody*, 206 F.3d 609 (6th Cir. 2000), the Court of Appeals considered a case in which the defendant, on advice of counsel, rejected a plea offered by the government during plea negotiations which took place before the defendant was formally charged. The district court, after a hearing, concluded that counsel's performance was constitutionally deficient and caused the defendant to reject the plea. It granted relief. The Court of Appeals reversed.

The issue on appeal was not the extent to which counsel's advice was erroneous; the

7

government conceded that counsel was ineffective. However, just as it does here, the United States argued that the right to constitutionally effective assistance of counsel had not yet attached when the erroneous advice was given because the defendant had not been formally charged. Analyzing a substantial body of precedent, the Court of Appeals concluded that a "bright line" test must be applied, and the test is the one articulated by the Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 689 (1972) - that "the Sixth Amendment right attaches only 'at or after the initiation of judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment....'" *United States v. Moody*, 206 F.3d at 614, *quoting Kirby, supra.* The Court of Appeals reached this conclusion with some reluctance, noting that "it seems a triumph of the letter over the spirit of the law to hold that [the defendant] had no right to counsel in his decision to accept or deny the offered plea bargain only because the government had not yet filed formal charges," but it felt constrained by both its own prior decisions and Supreme Court precedent from holding differently. *Moody, supra,* at 616.

The Sixth Circuit Court of Appeals is not the only federal appeals court to so hold. In *Philmore v. McNeil*, 573 F.3d 1251, 1257 (11th Cir. 2009), the court determined that a defendant "cannot establish a violation of his constitutional right to the effective assistance of counsel prior to his being charged ... because his Sixth Amendment right to counsel as to that offense had not yet attached." And in an even more egregious situation than the one presented here, where counsel both advised his client to surrender himself to police at a time when no charges were pending, and to confess to a crime that police could not

8

have charged him with absent a confession, the Court of Appeals for the Second Circuit found no Sixth Amendment violation because "formal proceedings had not commenced when [the defendant] confessed" and "[a] defendant cannot prevail on an ineffective assistance of counsel claim when the constitutional right to counsel has not attached." *Claudio v. Scully*, 982 F.2d 798, 802 (2d Cir. 1992).

In his reply memorandum, petitioner acknowledges that *Moody* appears to be controlling on the issue of when the right to counsel attaches, but he makes two arguments in support of his claim that *Moody*, despite its factual similarity to this case, does not completely determine the outcome. In his second argument, he asks the Court to determine that *Moody* was wrongly decided. The Court need not discuss that argument at length; *Moody* is binding on this Court unless and until the Court of Appeals says otherwise. *See In re Higgins*, 159 Bankr. 212, 215 (S.D. Ohio 1992)("the district courts are bound by decisions of the Sixth Circuit even if decisions from other circuits seem more persuasive"). District courts in other Circuits need not follow *Moody*, and some have not. *See, e.g., United States v. Wilson*, 719 F.Supp.2d 1260 (D.Or. 2010)(holding that pre-indictment plea negotiations are a "critical stage" of the proceedings to which the right of counsel attaches). This Court does not have the luxury of writing on a clean slate. Under *Moody*, Mr. Owen could not have provided petitioner with any constitutionally-deficient advice prior to April 14, 2010, the date on which the indictment was returned.

Petitioner's other argument is that because Mr. Owen continued to represent him after the indictment was returned, *Moody* does not apply. He correctly points out that Mr.

9

Owen was his attorney at times when the Sixth Amendment right to counsel applied. He then claims that "he continued to act upon the bad advice from Mr. Owen after that right attached" so that his Sixth Amendment rights were violated. *See* Reply Memorandum, Doc. 153, at 12. For the following reasons, the Court cannot accept this argument.

First, the record does not show, and petitioner does not really argue, that any advice which Mr. Owen gave to petitioner after his indictment and arrest was constitutionally deficient. He cannot point to any action, failure to act, or advice on the part of Mr. Owen after the indictment was returned which fell below constitutionally-acceptable norms. The gist of his claim is that the bad advice was given at the time that petitioner, on Mr. Owen's suggestion, discharged Mr. Meeks and then decided not to try to work out a plea deal with Ms. Hahnert. All of this occurred before the indictment was returned.

As noted, petitioner claims that he continued to rely on the prior advice after the indictment was returned. However, the Court does not find that at any time between April 14, 2010 and May 28, 2010, when Mr. Owen's motion to withdraw was granted, petitioner was actually prejudiced by that advice. There is no proof in this record that after the indictment was returned, any prior plea deal was still on the table. In fact, the record suggests just the opposite - that the offer stood until the government was forced to seek an indictment, and that once the indictment was returned, any plea deal would have to address the charges contained in the indictment (which is exactly what occurred). In other words, although Mr. Owen's advice may have caused the United States to seek an indictment, to the prejudice of his client, once that happened, even if he had advised

10

petitioner the next day to try to negotiate a plea, there is no evidence that any deal would have been offered other than the one which petitioner eventually accepted. Under those circumstances, petitioner cannot prove prejudice. It is also worth noting that, just as in this case, the attorney in *Moody* who provided the faulty pre-indictment advice also represented the defendant after charges were filed, but the Court of Appeals did not consider that fact as changing the result.

     One additional comment is in order. The record is fairly vague on what deal the United States was actually offering to petitioner. Presumably, however, it would have involved his pleading to an information which charged him with a narcotics offense serious enough to carry a twenty-year maximum sentence. Given the charges ultimately filed, it is almost impossible to believe that the government would have limited its charges to something which carried a shorter maximum sentence. Consequently, had petitioner pleaded to such an information, the guideline sentence calculation would not have been materially different. He still would have been a criminal history category VI, and the relevant conduct would likely have produced a base offense level comparable to, if not identical to, the one actually used in this case. The favorable treatment given to petitioner by the government, in the form of the 5K1.1 motion, only resulted in a four-level reduction. Had that motion asked for a larger reduction, it is still not clear that the guideline range would have been low enough to accommodate the sentence which the Court actually handed down. Consequently, the conclusion which petitioner has drawn here - that he got a longer sentence because he turned down a plea deal prior to the indictment - rests more

on speculation than proof. Nevertheless, the Court need not reach this issue because it has found that petitioner was not prejudiced either by anything Mr. Owen may or may not have done during that time that petitioner had a Sixth Amendment right to counsel, nor by any continued reliance on Mr. Owen's earlier advice once the right to counsel attached. Under these circumstances, the motion to vacate lacks merit.

## IV.  RECOMMENDATION

For the reasons set forth above, it is recommended that petitioner's motion to vacate, correct or set aside sentence (Doc. 134) be **DENIED**.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal

the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                /s/ Terence P. Kemp
                                                United States Magistrate Judge